FOLEY et al. v. OKLAHOMA STATE
UNION, etc., et al.

No. 32658. May 27, 1947.

*181 P. 2d 259.*

Creekmore Wallace, Don Anderson, and B. E. Harkey, all of Oklahoma City, for plaintiffs in error.

William M. Franklin, of Oklahoma City, for defendants in error.

BAYLESS, J. The plaintiffs, Ed Foley and 14 other individuals, all claiming to be members of the Oklahoma State Union of the Farmers' Educational and Co-Operative Union of America (hereafter called the State Union), together with three local unions which are members of the State Union, brought suit in the district court of Oklahoma county against the State Union, its officers, the members of its executive committee, and the Union Mutual Insurance Company (hereinafter called the Union Mutual).

Plaintiffs prayed for the appointment of a receiver to take charge of the assets of the Farmers' Union, for an accounting, that the executive committee of the Farmers' Union be enjoined from engaging in ultra vires activities, and that the Union Mutual be impressed with a trust for the benefit of the members of the State Union. The trial court decided the issues in favor of the defendants, denying plaintiffs any relief, from which adverse decision the plaintiffs have appealed.

The defendant, the State Union, is an unincorporated association chartered by the National Farmers' Educational and Co-Operative Union of America, a Texas corporation. Said defendant has never been issued a charter by the Secretary of State of Oklahoma and has not incorporated in this or any other state. It is an entity separate and distinct from that of the national organization. It is a nonstock, nonprofit organization, authorized to buy for and sell only to its members under the provisions of its constitution and by-laws.

The following are eligible to become members of this organization: farmers, country mechanics, school teachers, physicians, and ministers of the gospel. However, provision is made in the by-laws for nonvoting members, who may belong to any business or profession and may participate in the financial, educational, and social benefits of the Union. The purposes of the Farmers' Union as stated in its constitution are to assist the members in buying and selling, to educate the farming class in scientific farming, to systematize methods of production and distribution, to secure profitable prices for agricultural products, and to bring farming up to the standards of other industries and business enterprises. The membership fee is $1 and the annual dues are $2 for each member. The State Union was organized over 30 years ago and its membership is now in excess of 25,000. It is managed by its president under the supervision of the executive committee. The president is elected for a term of one year and the executive committee for a term of three years. The officers and the members of the executive committee are elected at the annual state meeting, where each local union is represented by its elective delegates.

For the past 25 years the State Union has written insurance on farm property and crops upon a mutual assessment plan. Insurance premiums for the year 1945 amounted to $395,000. The State Union operates a merchandising exchange in Oklahoma City. Originally it sold only binder twine, fence posts, and coal, but in recent years it has expanded in scope so that it now handles many articles of merchandise, such as flour and feed, clothing, hardware, automobile accessories, groceries, gasoline, oil, and kerosene. The gross sales from this department exceeded $411,000 and the net profit exceeded $22,000 for the year 1945. The net value of the assets of the State Union as of December 31, 1945, are given as $388,259. These assets are back of its insurance and business activities.

Prior to 1938 the State Union wrote fire and tornado insurance on rural churches, schools, and business property, mostly in unincorporated towns. The question was raised as to the authority and propriety of writing this type of insurance. The executive committee decided to organize a separate insurance company and to transfer these policies to the new company.

The following minute was entered in the journal of the State Union under date of March 8, 1938:

"The proposition of the Constitution and By-Laws for the Union Mutual Insurance Company was carefully considered and adopted."

Twenty persons are listed in the articles of incorporation as being the organizers of the Union Mutual, seven of whom were officers and members of the executive committee of the State Union, and they (the same seven) comprised all but two of the members of the board of directors of the Union Mutual, which consisted of nine members. Some 500 policies were transferred from the State Union to the Union Mutual. At the same time $10,000 was transferred by check from the State Union to the new company. This money, as unearned premiums, belonged with the policies transferred to the Union Mutual or, as some of the witnesses described it, as surplus reserves accumulated while said policies were held by the State Union. The following minute was entered in the State Union's journal on March 8, 1938:

"After some discussion with reference to the most feasible plan of procedure insofar as legalizing the new insurance company, financially speaking, it was moved by Smith and seconded by Hendrickson that President Cheek and Secretary Lawter, be and are hereby authorized to set over the necessary unearned premium due the said insurance company on such risks as have been set over from the Farmers' Union Mutual Property Insurance Company to the Union Mutual Insurance Company. Carried unanimously."

The $10,000 figure was not computed by an actuary but it was computed by use of a formula furnished by the State

Insurance Board. The annual statement or report of the Union Mutual filed with the Insurance Board for the year 1944 contains the following statement: "Donated Surplus . . . $10,000." That is the only evidence indicating that this fund was donated or given to the new company. There is abundant evidence to the contrary. The Union Mutual has occupied office space in the State Union's offices without paying rent or utility bills since the date of its organization. However, the evidence discloses that the State Union derives certain benefits from the Union Mutual. It furnishes the State Union, free of cost, printed forms of endorsements of various kinds to be attached to policies. By writing policies on rural schools, churches, and lodges in small communities the Union Mutual has helped to build up good will and contacts for the membership and the insurance department of the State Union, so that both organizations are mutually complementary and helpful. At the time of the trial three of the officers of the State Union and three of its directors, or a total of six of its officials, were members of the board of directors of the Union Mutual. The 1945 audit prepared for and at the expense of the State Union carries the Union Mutual as one of the departments of the State Union, and under the "Consolidated Balance Sheet by Departments" which is part of the audit, the assets and liabilities of the Union Mutual are listed along with those of the other various departments of the State Union. The State Union has from time to time advanced money to the Union Mutual without charging interest therefor. In 1943 the Union Mutual owed the State Union over $15,000, commented on by the Insurance Commissioner in his report as follows:

". . . It has been and is at this time the practice, that the Farmers Union will issue its check for expense and disbursement items, when due, and the Company issue its check at a subsequent date to the Farmers Union covering the combined total of the various amounts. The last check issued by the Company on this basis was March 9, 1942, to the Farmers Union in the amount of $19,333.83. This check covered accumulated items to June, 1941."

The 1945 audit showed the balance due the State Union to be $8,018 and at the time of trial it was approximately $1,100. During the six years of its existence the Union Mutual has paid its policyholders approximately $41,000 in dividends.

Plaintiffs urge that the Union Mutual is in truth and fact a part of the State Union and that it should be impressed with a trust for the benefit of the members of the State Union. They state that the policyholders of the Union Mutual are getting "a free ride" at the expense of the State Union.

The Union Mutual was organized under the General Insurance Act of 1915, 36 O. S. 1941 § 371 et seq. It is subject to auditing and general supervision of the State Insurance Board. It has a board of directors of nine members whereas the State Union has a five member board. It pays for its office equipment, rate service to the Oklahoma Inspection Bureau, and the salaries of its own employees. It keeps separate records and its funds are kept separate and apart from those of the State Union, although subject to audit by the State Union as heretofore mentioned.

The status of the Union Mutual is the vital question involved in this action. The evidence clearly establishes that the $10,000 was not donated to the Union Mutual as a gift. It was transferred as unearned premiums for the policies which were transferred to the Union Mutual. This money legally belonged to the new company and it would have been a fraud on its policyholders for the State Union to have retained it. This so-called gift or donation is the basis of plaintiffs' action to establish a trust. In failing to establish this fact they have failed to establish the trust.

It is plain that the Union Mutual was organized and is controlled to a large extent by the State Union; however,

the State Union did not use its own money to organize the Union Mutual and its members were not injured in any way by the formation of the new company. The State Union has furnished office space to the Union Mutual free of charge, but the benefits it has derived by reason of its close association with the Union Mutual appear to more than offset this expense. Whether the State Union should continue this close association with the Union Mutual is a matter of policy to be determined by the members of the organization.  •

The advancement of money by the State Union to the Union Mutual is beyond the scope of authority granted by its constitution and by-laws.

Plaintiffs next urge that the State Union is subject to the provisions of chapter 181, S. L. 1923, 2 O. S. 1941 § 331 et seq., which provide that certain co-operative associations exercising or attempting to exercise corporate rights and powers are subject to certain restrictions. This act provides that only producers of agriculture or horticulture (including both landlords and lessees) can become members of such association and that it must be operated for the mutual benefit of the members thereof.

Defendants deny that the State Union is subject to the provisions of the act. As we have pointed out, the Union Mutual is a separate legal entity and therefore authorized to operate for the benefit of nonmembers of the State Union. The evidence discloses that the other abuse complained of, i.e., selling merchandise to nonmembers, has been corrected. There is no evidence that nonproducers of agriculture or horticulture have been admited to membership in the State Union. Plaintiffs' right to relief in this action is the same regardless of whether the State Union does or does not come under the act. Therefore, it is not necessary to pass on this question.

Plaintiffs offered testimony of a witness, who was the assistant sales manager of the sales exchange in Oklahoma City until discharged in 1944, to the effect that sales were made to members and nonmembers alike.

The evidence discloses that this condition has existed to some extent in the past but that the executive committee has taken positive steps to correct this abuse. Placards have been placed in the store warning that sales to nonmembers are prohibited. The employees have been carefully instructed not to make such sales, and during the six-months period preceding the trial there were no sales to nonmembers so far as could be ascertained.

In 1945, the Oklahoma Farmers' Union Co-Operative was organized as a marketing co-operative with capital stock under chapter 38, S. L. 1937, 2 O. S. 1941 §§ 361-361(y). The State Union took one share of voting stock in the new co-operative and there were eight other shares of voting stock issued to eight separate farm co-operative associations, all located in Oklahoma. This was in accordance with section 361(i), which provides:

". . . Each shareholder or member shall be entitled to one vote, and no more, irrespective of the number of shares owned or patronage."

The State Union took nonvoting preferred stock in the amount of $80,000 in exchange for an elevator built by it in 1944, and other property transferred to the Oklahoma Farmers' Union Co-Operative.

In 1945 the State Union paid an indebtedness of the Oklahoma Farmers' Union Co-Operative of $80,100 to the Wichita Bank for Co-Operatives and took an assignment of the note and mortgage held by the Wichita bank. The assets of the Co-Operative amount to approximately $178,000 as shown by the 1945 audit. The Co-Operative operated at a deficit of $6,000 in 1945. However, during the first three months of 1946 it made a net profit of $9,000. This Co-Operative appears to be a definite benefit to the State Union. Among other things, it is able to purchase feed from

the Co-Operative for distribution to its members. This is in line with the avowed purposes of the State Union. It appears that this investment probably will be profitable. We find nothing wrong or illegal in this transaction.

There is no evidence in the record that the reserve of the insurance department of the State Union is being depleted. On the contrary, the Union's various enterprises have been operating at a profit for many years. There is no evidence of any fraud or mismanagement and nothing to indicate that a financial loss is imminent. We hold that denial of the application for a receiver was proper.

The 1945 audit appears to be fair and sufficiently complete so that the trial court was justified in treating it as an accounting.

The judgment of the trial court is affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, CORN, GIBSON, and ARNOLD, JJ., concur.